STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

CHARDA PROPERTIES, LLC

vs.

C.A. No.: PC 04-1084

TOWN OF JOHNSTON;
ZONING BOARD OF REVIEW
OF THE TOWN OF JOHNSTON;
and ANTHONY PILOZZI, Alias, in his
capacity as Chairman of the Zoning
Board of Review of the Town of
Johnston

**AFFIDAVIT OF STEPHEN A. MACCHIONI**

Stephen A. Macchioni, being duly sworn upon oath, hereby depose and say that:

1. I reside at 8 Nutmeg Drive, Johnston, R.I. 02929 and have personal knowledge of the facts contained in this affidavit.

2. From January, 2001 through December, 2004, I was an elected member of the Johnston Town Council and my district included property at or along Greenville Avenue (Route 5) in Johnston that is described as Assessor's Plat 55, Lots 24, 64 and 75. I will call this property "the land".

3. My district consisted of much more open space than in other districts in the Town, and this meant that there were more development proposals in my district than in the others.

4. As a common practice, I would arrange for potential developers to meet with the Mayor, the Building Inspector, and the Town Planner and at times the Planning Board Chairman to discuss proposals prior to submission or appearing in public forums.

5. Charda Properties was one of the developers that came to me about a potential project and as was my usual practice I had them meet with Mayor William Macera, Town Planner Jean Tracey-McGreavy, and Director of Building Operations George Corrente. There were 3 meetings at Town Hall before Charda appeared before the Planning Board.

6. During these 3 meetings and at other times when I met separately with these officials, the Town Planner voiced her objections and repeatedly talked about how she lived in the area and was not convinced that Charda could provide water and sewer as well as not be a disruption to the neighborhood. She also objected to the amount of units proposed as well as a multi-story structure. I told her that it sounded as if she was acting much more as a property owner and abutter than as a Town Planner and she never denied this. She later continued these objections during Planning Board meetings.

7. During the 3 meetings and at other times when I met with Mr. Corrente, he also raised objections, supporting the position of the Town Planner. He did not take seriously the proposal that Charda would be able to provide sewer and water for the project, despite seeing plans. As time went on he continued to ask Charda for information that other applicants with whom I was familiar never had to submit such as tree placement and curbing designs at early stages of the planning. He also told me after the 3 meetings with Charda that he would <u>never</u> <u>support</u> the project under <u>any</u> conditions and stands by his Town Planner. I never saw such a personal feelings take over in any other development plan discussions with other developers.

8. I found the concerns about the sewer and water connections to be inconsistent with other proposals since, for example, the same people had supported a nearby project for a Mr. Berraducci for a funeral home that needed similar sewer and water connections and granted Mr. Berraducci a permit pending sewer and water installation when it was very evident that Mr. Berraducci had not at the time produced evidence that he had the ability to do so. Granting permits pending sewer and water installation was in my experience the customary way this was done, but not in the case of Charda properties.

9. After numerous appearances before the Planning Board without making any progress, a legal dispute arose. I continued to try to act as a mediator but was unsuccessful. The Mayor and Town Solicitor, Louis DeSimone, also tried to help settle this dispute. However, Mr. Corrente became more indignant and said that he would go to court and never allow this project to proceed. Additionally, it appeared that other personnel in the Building Official's office, namely, Marian Morocco, was acting as obstructionists whenever Charda attempted to file documents, request forms, get information, present information or do much anything else.

10. During my tenure on the Johnston Town Council, there were proposals for affordable housing and each one was met with opposition by local residents and a majority of the Council members consistently opposed affordable housing. Charda's proposal was and is no exception.

This affidavit does not include all information that I have, nor does it reveal any information from Executive Sessions of the Town Council.

Stephen A. Macchioni

Subscribed and sworn by the above-named Stephen A. Macchioni on this 22nd day of September, 2005.

Notary Public