STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

CHARDA PROPERTIES LLC )
)
VS. ) PC/04-1084
)
TOWN OF JOHNSTON )

HEARD BEFORE JUSTICE STEPHEN FORTUNATO, JR.
NOVEMBER 18, 2005

APPEARANCES:

JOHN REILLY, ESQ., ON BEHALF OF THE PLAINTIF

LOUIS DeSIMONE, ESQ., ON BEHALF OF THE DEFENDANT

PATTI M. AHEARN

COURT REPORTER

# I N D E X

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| WITNESS | | | | |
| NONE | | | | |

# E X H I B I T S

| NO. | DESCRIPTION | IDENTIFICATION | FULL |
|---|---|---|---|

# C E R T I F I C A T I O N

I, PATTI M. AHEARN hereby certify that the following pages, 1 THRU 12, inclusive, is a true and accurate transcript, according to my stenographic notes.

Patti M. Ahearn

PATTI M. AHEARN, CSR, RPR
COURT REPORTER

DECISION

THE COURT: This is an application for a Writ of Mandamus on the part of the plaintiff developer to be issued against defendants so those defendants can be compelled by this Court to do a non discretionary act. The Complaint is grounded in the provisions of 45-53-4 titled Procedure For Approval of Construction of Low Or Moderate Income Housing. Of course, I'm referring to the law as it was written and as it was controlling in January of 2004. It was, as we know, amended in pertinent part on February 13th, 2004, but all relevant dates in this case are governed by the provision that was in existence prior to that amendment.

Among the things that that law provides is that upon receiving a proposal for a development that will contain within it a required number of units for low or moderate income housing, the Zoning Board has 30 days in which to conduct a hearing, and, then, 40 days from the conclusion of the hearing the Zoning Board must render a decision.

There is a provision here that is pertinent that reads, quoting, "If the hearing is not convened or a decision is not rendered within the time allowed, unless the time has been extended by mutual agreement between the Zoning Board and the applicant, the application is deemed to have been allowed and the approval shall issue

immediately. Any person aggrieved by the issuance of an approval may appeal to the Supreme Court." Which means a very brief reference to this Court's jurisdiction is in order. "A party aggrieved by a decision of the Zoning Board in a case such as this, may appeal to the State Housing Appeals Board under their regulations which is Section 8." That is, one who is aggrieved by a decision of the Zoning Board may appeal.

There is no decision ever rendered in this case by the Zoning Board, and there has been no approval issued, so there can be no appeal to the Supreme Court. The Supreme Court is assigned a role by the legislature in this entire legislative scheme to again facilitate and expedite hearings for these developments that will contain within them housing for low and moderate income people. The legislature in this legislation, and I believe elsewhere, has certainly declared there to be a crises in this state regarding providing low income and moderate income people with affordable housing, and to bring about that they've created this very expedited legislation pertaining to low and moderate income housing, but it would be pointless for the applicants here to go to the Supreme Court without having built the record below.

The Supreme Court does not, except in the most

unusual of circumstances, receive evidence, and, certainly, it is appropriate that this Court is available for an Application for Mandamus when there is no record that shows (number one) that the plaintiff has a claim of right, a right to have some public officials discharge a ministerial non discretionary function, and (number two) to prove that function has not been discharged.

I think it is appropriate to begin with a reference to that Housing Board decision again that I adverted to earlier in these proceedings, the decision by Judge Erickson back in 2000 entitled Housing Opportunities Corporation Versus the Zoning Board of Review of the Town of Johnston, Number 2000-3, the State Housing Appeals Board. Judge Erickson there wrote on behalf of the Board, quoting, "The argument of the Zoning Board and intervenor that petitioner's amendments to the CPA postpone the trigger date for the 30-day rule is not persuasive. The controlling factor here is that the Town of Johnston has no process in place to schedule a CPA within the required 30 days." And, by way of an aside, that is exactly what is involved here, a comprehensive plan application.

Returning to the text of Judge Erickson's decision, "The zoning ordinance does not even reflect the existence of the low and moderate income housing act, nor does it

provide in any way for a mechanism to hear expedited cases as required by state law. There should be a process in place to insure that a hearing is scheduled within 30 days, not simply at the next regularly scheduled Zoning Board meeting, and the process should also address how subsequent amendments will be addressed as well as the procedure to be used at the hearing and the standard of proof that is required of an applicant. The CPA was filed and accepted by the Town of Johnston on May 24th, 2000. The time frame for holding a hearing began to run on this date." End of quote.

I found it incredible, and I found Miss Tracey's testimony incredible that she had no awareness of this decision given the fact she has been with the Town and that she works in close coordination and cooperation with, indeed, as an official in one capacity or another, both the Planning Board and the Zoning Board. Apparently, officialdom in Johnston has totally overlooked this strong invitation. I don't know whether I could characterize it as a directive, but it appears that Judge Erickson and the State House Appeals Board, who Miss Tracey claims to have the regulations that she wants to follow, they are imploring Johnston to set up their own regulations and they never did, and that's why we had what we have here in this case a perfect storm for

the abuse of local official discretion.

Of course, when there is a hearing the Town can say what it has to say as to the propriety or feasibility of any plan that is submitted. And, they can build a record there, and then an orderly appeal process can take place, either going to the State Hearing Appeals Board or State Housing Appeals Board or to the Supreme Court, but, here, there is no record because the Johnston officials took it upon themselves to without any authority whatsoever to do so, determine that the application was not in order and there would be no hearing except for their own particular time frame, which, for the most part, was outside the 30 days that began to run on January 8th, 2004, or at the very latest on January 9th when the additional requested copies were submitted.

Of course, the amount required is far in excess of what the regulations of the State Housing Appeal Board require. They only require two applications, one to the Zoning Board, one to the Planning Board officer, but that is a non issue because Mr. Iascone promptly complied with the request and had close to 25 plans in circulation between those two entities, the Zoning Board and the Planning Board as of January 9th.

I found Miss Stearns and Mr. Iascone to be credible. I believe that it is almost impossible to conceive of a

more thorough plan being submitted. If I didn't say so earlier, she certainly is an expert in the field of planning and land use when it comes to affordable housing, did what was expected of any reasonable professional in that field to do, including asking the Town of Johnston for their rules or regulations and guidelines, only to be told that there were none.

Apart, from what Judge Erickson said, and I think it is significant and important given the fact that he and his Board have expertise in these matters, but even if he had never written this decision, rudimentary notions of due process require that there be rules and regulations to be filed especially when the legislature has created a process for permitting and licensing in order to reach a legitimate legislative objective, when they create this process that is clearly outside the ordinary run-of-the-mill garden-variety applications for zoning such as variances to put a garage on your property or to go out closer to the lot lines than is normally permitted. This, indeed, created a situation that is sui generis and they should have, that is, the Town of Johnston, should have created rules, regulations and guidelines as Judge Erickson suggests so you know what to do in different circumstances that would develop in the process.

The regulations of the State Housing Board are clear, and I had colloquy with Miss Tracey about this, and that is the Planning Board may, doesn't have to, but it may give its preliminary report and findings and recommendations to the Zoning Board prior to the start of the hearing, which hearing must be held within the 30 days of the application being filed. If the Planning Board has further things to say or to add, then the rules allow that it may do so before the hearing has concluded, that would be the so-called final findings of the Planning Board. But here, everything was scrapped and jettisoned, thrown out the window; and, moreover, we have the unique circumstance of notice being given by counter clerks when people come in to file their applications or happen to fortuitously drop by to check on how their situation is unfolding or what else may be required of them.

I believe Ms. Stearns and Mr. Iascone as to what happened regarding the January 16th counter conversation with Miss Marocco, who we now know has been terminated for dishonesty and abuse of her position within the Town of Johnston. I believe what they say happened.

I might say as bad as the notice is, the record keeping is just as bad, if not worse. Whoever heard in the age of computers and data processing and everything

else that you keep official records on Post-it notes that can get lost, get destroyed, and can get altered, and maybe there is no concrete proof that there was any altering, but, certainly, the date on that note looks as though it was marked as one way and then changed to another.

I believe, and I find him to be a credible witness, that Mr. Iascone was told to get an extension or would he please get an extension, and he did not comment himself to any extension at that time and said, "I'll call my lawyer." And he came back and said what he said, namely that what he learned from his lawyer, don't under any circumstances agree, to which he told Miss Marocco. We, of course, have not heard from Miss Marocco to contradict anything about that conversation, and I believe Miss Stearns when she says that in the context of the conversation no agreement was ever made.

I will take judicial notice, I think I may do so, that extensions, at least in court and at administrative hearings, are often done in writing so that there is no confusion or mistake about who said when the next hearing would be or that there has been an agreement as significant as this one. Everybody knew that the moratorium was approaching. It is not a crime by any stretch of the imagination to try to get the approval

prior to that moratorium going into effect, and Miss Tracey knew that her interests would be protected and she would have something in her file if she could get it in writing. She asked Miss Marocco twice to get it in writing. It never came back in writing. There is absolutely no obligation created under the statute that says the housing applicant or the developer must agree to a requested extension. It simply says that if the hearing is not convened within the time allowed unless the time has been extended by mutual agreement between the Zoning Board and the applicant. There is no obligation that the applicant has to concede or agree to any extension.

As I said, I certainly agree and accept some of the things that Miss Tracey had to say about the history of this case and what her responsibilities are with the Town, but I do say that I find some of her testimony implausible and not credible, especially as she set about, and I don't know whether it was on her own or at the direction of one of her superiors, and for the purposes of this hearing it makes no difference, but she set about to try to come up with these defects in the application. As I said, I find no defects, and the controversy that surfaces over Section 7 about waivers and exceptions and getting some special consideration or

waivers for zoning regulations, reservations of right and the like is more than adequate to apprise the defendant exactly what was being requested and what had to be done in order for this approval to go through.

The request becomes virtually impeccable when it is considered that there are all these maps and charts and graphs submitted, drawn by qualified professionals as to what they wanted; but, again, I'm not ruling on whether it is a good plan or a bad plan or what the Town should have done with it, but the point is the Town scrapped all reasonable procedures, had none in place, and acted the way it did thereby creating this problem.

Miss Tracey, in answer to questions from me, if I recall correctly, said she saw nothing in the plan about a commitment on the part of the developer to have some of this project, the appropriate percentage, set aside for low and moderate income people for housing for them, she didn't see the 30-year commitment, which the statute requires of private developers. Indeed, on the first page over the signature of Tapalian, is this commitment where they are asking for a finding of fact from the Board that they were going to have this amount, the requisite amount aside for the poor and moderate income people..

So, it seems to me that the evidence submitted by

the plaintiff is not simply clear and convincing, it is overwhelming, it is beyond a reasonable doubt that the Town without any written rules, regulations or guidelines, followed a course of action here that was designed to thwart and frustrate the applicant who was seeking at all times to comply with the law and get the hearing. The hearing clearly was not conducted within 30 days of the application which I find to be in total compliance with any request or with any statutory requirements as to what it should constitute, and the Town just ignored it and gave no notice, made no effort to bring about the hearings.

Justice Frankfurter many years ago wrote in a case when he was sitting on the Supreme Court of the United States, "This Court cannot ignore as judges what we know to be true as men." I have no doubt if he were saying it today he would say, "what we know as men and women". But the point is that this Court was not born yesterday. Some people in Johnston don't want this development to go through, and so they come up with this crazy quilt of unwritten rules and procedures and practices and fly in the face of all rudimentary notions of due process beginning with or even predating Armstrong versus Manso up to the present time. Hearings must be conducted with adequate notice at a meaningful time in a meaningful

manner, and we hear about there is no room available so we can't have a hearing. I mean, it is incredible.

So, the mandate of this Court, the Writ of Mandamus will issue directing the planning and zoning officials to forthwith issue the appropriate permits and licenses for this project to get underway.

MR. DeSIMONE: Your Honor, with regard to one of the exhibits, I believe, Exhibit 9, your Honor, the transcripts of the Council meeting from August of 2004, that was an executive session, so I would request that the Court seal that particular portion of the exhibits at this point.

MR. REILLY: I have a copy, your Honor. I have no objection to that, your Honor. I would also ask that the exhibit with the Post-it note be sealed so that it not be removed from the record.

THE COURT: So, it doesn't get lost?

MR. REILLY: Yes, exactly, both of those, Judge.

THE COURT: They may both be sealed.

***************