UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARDA PROPERTIES, LLC,<br>and DAVID IASCONE,<br>*Plaintiffs,*<br><br>v.<br><br>TOWN OF JOHNSTON, et al.,<br>*Defendants.* | C.A. No. 06-117 ML |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME defendants in the above captioned matter and hereby move for the entry of summary judgment on all counts. In support thereof, defendants rely upon the Memorandum of Law and Statement of Undisputed Facts, attached and incorporated herein.

Defendants,
By their attorney,

/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on September 5, 2007, and is available for viewing and downloading from the ECF system.

John B. Reilly, Esq. (#1811)
JOHN REILLY & ASSOCIATES
Suite 330 - Summit West
300 Centerville Road
Warwick, RI 02886

Alden C. Harrington, Esq.
BOYAJIAN HARRINGTON & RICHARDSON
182 Waterman Street
Providence, RI 02906

/s/ Marc DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHARDA PROPERTIES, LLC,
and DAVID IASCONE,
*Plaintiffs,*

v.

TOWN OF JOHNSTON, et al.,
*Defendants.*

C.A. No. 06-117 ML

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs, Charda Properties, LLC and David Iascone filed a seven count complaint against the Town of Johnston and certain of its officials seeking monetary damages for the defendants' treatment of Charda Properties' comprehensive permit application for a low income and affordable housing project. The plaintiffs allege that the Town and its officials violated the plaintiffs' rights to equal protection and conspired to interfere with the plaintiffs' civil rights. In addition, plaintiff Charda Properties claims that all of the defendants interfered with its prospective business relationships regarding this development project. Plaintiff Iascone alleges that certain defendants interfered with his business relationship with the co-plaintiff corporation and, in addition, that certain defendants committed the act of extortion.

The defendants submit that even after extensive discovery plaintiffs fail to muster enough evidence to support the high standard attached to their equal protection and Civil Rights' conspiracy claims. In addition, as a matter of law, the plaintiffs' claims of interference with

prospective business relationships must fail and that plaintiff Iascone's extortion claim is invalid. The defendants thus respectfully move for summary judgment on all counts.

## II. FACTS

1. Plaintiff Charda Properties was incorporated on October 9, 2002 and two days later, the plaintiff David Iascone purchased shares in the company.

2. On October 31, 2002, Charda Properties purchased the subject property (Assessor's Plat 55, Lots 24, 64 and 75) ("the property").

3. The plaintiff, Charda Properties originally sought to develop the property for use as high end condominiums. In order to do so, the plaintiff company sought to change the zoning of the property from an R-40 (residential) to a PD (Planned District) classification.

4. Plaintiffs filed their Zoning Ordinance Amendment Petition and the matter was placed before the Town of Johnston Planning Board on its agenda for its meeting to be held on June 3, 2003.

5. On that date, the Planning Board determined that materials submitted were unacceptable and needed greater detail at that stage of the review.

6. On September 2, 2003, the Planning Board was still not satisfied with the application submitted by the plaintiff Charda Properties. They determined that the application was significantly incomplete and missing many details that would be required in order to have a meaningful hearing. *See Exhibit A, Planning Board Minutes, September 2, 2003 at 2.*

7. The matter was continued to the next hearing date so that the applicant could meet with the Town Planner to discuss what was needed in the application. This Zoning Change Petition did not come before the Planning Board, again.

8. On January 8, 2004, the plaintiffs filed a Comprehensive Permit Application ("CPA") which was for low income and affordable housing in place of their original plan for high-end condominiums.

9. The Planning Board discussed this application at its meeting held on February 3, 2004. In its Minutes, the Planning Board noted the following:

> "These large scale site development proposals [the other being "The Groves"] require a waiver of practically all the subdivision regulations. In understanding how long this type of review would take, Chairman Riccio recommends establishment of a technical review committee as outlined in the Subdivision Regulations used by the Zoning Board during their deliberations of these applications." <u>See</u> *Attached Exhibit B, Planning Board Minutes, February 3, 2004 at 4.*

10. R.I.G.L. § 45-53-4 states that the Board's review of Comprehensive Permit Applications must be completed within thirty (30) days of receipt of the application or is otherwise automatically granted.

11. The defendants submit that the plaintiff consented to an extension of this thirty (30) day period by and through the representations of Plaintiff Iascone to the date of February 26, 2004. The plaintiff contends that it did not consent to any extension in accord with R.I.G.L. § 45-53-4.

12. Nevertheless, the plaintiff's application was placed on the Zoning Board agenda for February 26, 2004. Neither plaintiff attended this meeting and both contend they did not receive notice of it. In any event, at the beginning of the meeting, the application was called and the Chairman noted that regardless of the lack of attendance, a State moratorium had gone into effect precluding the Board from granting the CPA. <u>See</u> *P.L. 2004, Ch. 4, S2139 (January 22, 2004).*

13. On March 1, 2004, the plaintiff Charda Properties filed a complaint for declaratory relief and a prerogative Writ of Mandamus in Providence County Superior Court (C.A. No. 04-1084), requesting a writ of mandamus from the Superior Court ordering the defendants to issue the appropriate permits and licenses in order for plaintiff to construct 144 condominium units based on the alleged violation of the thirty (30) day time limit.

14. On November 29, 2005, Judge Fortunato granted Charda Properties, LLC's Writ of Mandamus stating, in part:

> "….directing that the defendants forthwith issue appropriate permits and licenses, authorizing the plaintiff to construct 144 condominium units (29 of which will be low and moderate income housing units), to be called "the Pines Condominiums" as described in the plaintiff's comprehensive permit application under R.I.G.L. 45-53 as filed with the defendants on or about January 8, 2004, respecting real estate described as comprising Assessor's Plat 55, Lots 24, 64 and 75 at or in the vicinity of 55-64 Greenville Avenue, Johnston, RI, all in accordance with the plaintiff's application for the same and the relief demanded in the plaintiff's complaint." <u>See</u> *Order (November 29, 2004) (Exhibit C).*

15. On December 19, 2005, the defendants filed a notice of appeal with the Rhode Island Supreme Court regarding Judge Fortunato's decision.

16. The plaintiff subsequently filed the instant suit seeking to recover for the alleged constitutional violations stemming from the Town's handling of the Pines Condominium Comprehensive Permit Application.

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* It is axiomatic that this Court must view the evidence in the light most favorable to the nonmoving party. *<u>Morrissey v.</u>*

*Boston Five Cents Savings Bank, F.S.B., 54 F.3d 27, 31 (1st Cir. 1995).* However, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e).* "A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997) (citations omitted).*

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).*

According to Fed. R. Civ. P. 56(e):

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. (Emphasis added).

Based upon the foregoing, the United States Supreme Court observed that the above two sentences of Rule 56 (e) were added "to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings." *Celotex Corp, 477 U.S. at 3254.* "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).*

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id. at 250*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. at 250-51, 106 S. Ct. at 2511.* As the Court recognized:

> [n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Id. at 251 (emphasis in original).*

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id. at 252, 106 S.Ct. at 2512*.

## IV. ARGUMENT

### A. The Equal Protection Claims

#### 1. Introduction

In Counts I and II, both plaintiffs claim a denial of equal protection. In Count I, plaintiff Charda Properties generally alleges that the conduct of the defendants, Planning Board members, Anthony Pilozzi, William Riccio, Ernest F. Pitochelli, Joseph Wells, and the building inspector, George Corrente and Town Planner, Jeanne M. Tracey-MacGreavey, resulted in it being selectively and disparately treated when compared with others similarly situated. *Plaintiff's Complaint, paragraph 86*. This plaintiff claims that the selective treatment is based on

impermissible considerations "such as the intent to inhibit or punish the exercise of Charda's constitutional rights or to maliciously and/or in bad faith injure Charda." Id. *at ¶ 88.*

Similarly, plaintiff Iascone claims that he was subjected to selective and disparate treatment when compared with others similarly situated. Id. *at ¶ 94.* He further claims that this selective treatment was based on impermissible considerations "such as the intent to inhibit or punish the exercise of Iascone's constitutional rights or to maliciously and/or in bad faith injure Charda." Id. *at ¶ 96.*

"The Equal Protection Clause contemplates that similarly situated persons are to receive substantially similar treatment from their government." *Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004).* In order to establish their claims, plaintiffs must present evidence that (1) "compared with others similarly situated, [it] was selectively treated" and (2) the selective treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id. (citations omitted.)* The defendants submit that even with extensive discovery, plaintiffs still fail to produce sufficient evidence "upon which a jury could properly proceed to find a verdict" in their favor on their equal protection claims. *Anderson, 477 U.S. at 251.*

**2. The similarly situated element**

A plaintiff "claiming an equal protection violation must first identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled…out for unlawful oppression." *Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (citation and internal quotations omitted.)* "The test is whether a prudent person, looking objectively at the incidents,

would think them roughly equivalent and the protagonists similarly situated.* * * Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Tapalian, 377 F.3d at 6 (citations omitted.)*

In the instant case, the plaintiffs are silent on what other similarly situated individuals or entities were treated differently by the defendants. The plaintiffs do not identify others who were similarly situated or provide instances of the different treatment. In the fact section of the complaint, the plaintiffs rely on an affidavit filed by a former Johnston Town Council Member named Steven A. Maccione. In paragraph 77, the plaintiffs cite the Maccione affidavit to confirm their allegations that the information requested by the Building Inspector from Johnston was "much more than what other applicants had been asked to produce" and further that this former Town Council Member "never saw such personal feelings take over in any other development plan discussions with other developers." *Complaint, ¶ 77, citing Maccione Affidavit, at ¶ 7.*

Even if true, these allegations fall well short of establishing the similarly situated standard. In the first instance, as noted above, a Comprehensive Permit essentially frees the development from all subdivision regulations. It follows therefore, that a municipality would require detailed plans before granting such a permit and thus, waiver. In order to properly claim to be "similarly situated", plaintiff must "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." *Rubinovitz, 60 F.3d at 910.* The allegations relied upon by plaintiffs are too general to be of any use because they do not identify the other individuals or development projects and the process entailed by which those projects were approved by Town officials or even whether the other projects were for Comprehensive Permit applications.

The defendants submit that the reason the plaintiffs do not provide this evidence or even allege it in the complaint is that it does not exist. However, whatever the reason, without "sufficient evidence favoring [plaintiff] for a jury to return a verdict for [them]," there is no issue for trial. *Anderson, 477 U.S. at 250.* Summary judgment should accordingly enter in favor of defendants.

**3. The impermissible grounds element**

Defendants further submit that even if the plaintiffs were able to meet the first prong of the equal protection analysis, they cannot meet the second prong. As stated *supra*, the second prong requires evidence of selective treatment based on impermissible grounds. Constitutionally recognized impermissible grounds are "race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz, 60 F.3d at 910*. In their Complaint, the plaintiffs specifically allege that defendants' actions demonstrate an intent to inhibit or punish the exercise of the plaintiff's constitutional rights or to maliciously and/or in bad faith injure the plaintiffs. *See Complaint at ¶¶ 88 and 96*. The Complaint fails to identify the constitutional right the plaintiffs' claim the defendants intended to inhibit or to exact punishment. In fact, it is difficult to conceive of the constitutional right that could be claimed since the suit emanates from the plaintiffs' desire to develop property.

In order to prove plaintiffs' claim that defendants possessed a malicious or bad faith intent to injure plaintiffs, it is not enough that the City's actions were simply arbitrary or erroneous. *Tapalian, 377 F.2d at 6.* Instead, plaintiffs must establish that the actions constituted a "gross abuse of power." *Id.* Furthermore, "[i]n the field of local permits, the nature of the government conduct (or misconduct) required to establish either a substantive due process or an equal protection claim is so similar as to compress the inquiries into one. * * * In equal

protection cases [the First Circuit has] articulated the need to establish a gross abuse of power, invidious discrimination or fundamentally unfair procedures." Baker v. Coxe, *230 F.3d 470, 474 (1st Cir. 2000) (citations and internal quotations omitted.)*

Gross abuse of power, bad-faith or malicious-intent-to-injure cases are infrequent. Rubinovitz, *60 F.3d at 911.* Therefore, "the malice/bad faith standard should be scrupulously met." Id. *(citations and internal quotations omitted.)* An arbitrary denial of a permit or application does not meet the constitutional threshold for equal protection and substantive due process claims, even if the denial was in violation of state law and in bad faith. Baker, *230 F.3d at 474*. As the Baker court stated, there is a "marked difference between the inevitable misjudgments, wrongheadedness, and mistakes of local government bureaucracies and the utterly unjustified, malignant, and extreme actions of those who would be parochial potentates." Id. *See also* Barrington Cove Limited Partnership v. Rhode Island Housing and Mortgage Finance Corp., *246 F.3d 1, 11 (1st Cir. 2001) ("[T]he mere fact that appellees may have violated or abused federal or state regulatory regimes by imposing the charitable contribution requirement upon Barrington, in effect wrongfully imposing an application "fee" in excess of regulatory limits, has no direct bearing on whether appellees violated Barrington's equal protection rights.")*

Rubinovitz illustrates the level of extreme conduct necessary for the gross abuse of power/malice/bad faith standard. In that case, a city official allegedly engaged in a vendetta against the plaintiffs because the plaintiffs evicted her friend from their rental apartment. The official enlisted other city officials to cut off the plaintiffs' utility services, charge plaintiffs with building code violations and interfere with their hiring of a building contractor. The Rubinovitz court determined that there was enough of an indication of a malicious orchestrated campaign

causing substantial harm – "though only barely enough evidence" – for the plaintiffs to survive summary judgment. *Rubinovitz, 60 F.3d at 912.* In Baker, the court observed that Rubinovitz "illustrates the extreme malicious orchestrated campaign needed to surmount the constitutional threshold." *Baker, 230 F.3d 474*.

In the instant case, the plaintiffs cannot identify any evidence of an extreme malicious orchestrated campaign necessary to establish the gross abuse of power standard. The plaintiffs make an allegation that the Building Inspector, defendant George Corrente, stated in late 2003 that there was "no way" the project was "going through" and that it would only go through "over [Corrente's] dead body." *Complaint at ¶ 30*. The defendants submit that this allegation, even if true, is woefully short of the malice needed to meet this element. In the first place, it should be noted that Mr. Corrente as the Building Inspector did not have any involvement in the Planning Board's determination of whether to continue the hearing. Further, deposition transcripts reveal that the plaintiffs' claims of animosity regarding Mr. Corrente and plaintiff Iascone or Mr. Tapalian, the Principal of Charda Properties are, at best, exaggerated without any identifiable source. The plaintiff's counsel has conducted the following depositions:

1. Defendant Ernest Pitochelli, Town Council member;
2. Former Mayor Macera;
3. Former Town Clerk Marion Marocco;
4. Former Town Planner Tracey MacGreavey;
5. Anthony Pilozzi, former Zoning Board Chairman;
6. Edward Bernard Salvatore, former building inspector; and
7. Town Council Member Joseph Wells.

In all of these depositions, there has been no testimony confirming any hint of personal animosity between Town officials and either of the plaintiffs. The testimony of Ms. Tracey MacGreavey is illustrative of the type of evidence likely to be presented by the plaintiff regarding the element of malice:

**Question:** Ok. Let's start with that first meeting in 2003 when the voices were raised between Mr. Corrente and Mr. Tapalian and that go-around pro vice. Immediately after that meeting, or within the next day or two after that meeting, did Mr. Corrente discuss Charda Properties and Mr. Tapalian or Mr. Iascone with you?

**Answer:** Other than possibly afterwards, since he had just had an encounter with him, and I don't remember if that was the first meeting or the second meeting, but more like what I call sputtering, when you had a go-around with someone you kind of sputter afterwards.

**Question:** What kind of sputtering did he---what kind of sputtering-uttering or uttering did Mr. Corrente do or make? In other words, what sputtering? What was the sputtering?

**Answer:** Well, more like, "I don't like his attitude he's not—he's so disrespectful to me. I don't know why he thinks he can be that way," and that kind of thing.

**Question:** Talking about Mr. Tapalian.

**Answer:** Mr. Tapalian yes.

**Mr. Riley:** Alright.

**Answer:** They were not respectful of each other.

**Question:** Ok and as time went forward from that point on, did Mr. Corrente have any more remarks, observations or discussions with you about Mr. Tapalian?

**Answer:** Other than to say "that guy again" that type of thing.

*Deposition of Jean M. Tracey-MacGreavey, (January 4, 2007) at 205- 206.*

**Question:** Did you discuss Mr. Iascone or this project with Mr. Corrente at any time since you appeared before Judge Fortunato?

**Answer:** I probably briefed him on what had happened in Court. I just thought—the term the Judge always used about Mr. Tapalian was "that guy, he was so fresh," and that's the term he always used about him, "he was so fresh," so…

*Id. at 209.*

The defendants contend that this type of evidence certainly does not rise anywhere near the level necessary to meet the gross abuse of power standard. This fact is evident when the defendants' conduct is contrasted with that of the defendants in *Tapalian, 377 F.3d at 7* and *Rubinovitz*. In *Tapalian*, for example, the First Circuit noted that the trial record was "laden with the language of personal malice and 'bad faith' retaliation, aimed at punishing Tapalian immediately following his rejection of Tusino's (the DPW Director) request that Tapalian supply him with 'two women.'" *Tapalian, 377 F.3d at 7.* The malice/retaliation included Tusino imposing onerous and costly conditions on Tapalian's development project. Many of these conditions violated a previous court agreement and served no legitimate purpose. *Id*. Further, Tusino's assistant told Tapalian's contractor that "Tusino was intent on deliberately busting [Tapalian's] balls." *Id*. These activities were sufficient to find that Tusino had engaged in a malicious orchestrated campaign causing substantial harm constituting a gross abuse of power. *See also Esmail v. Macrane, 53 F.3d 176, 178, 180 (7th Cir. 1995) (viable equal protection violation where "a powerful public official picked on a person out of sheer vindictiveness" in "a spiteful effort to get him for reasons wholly unrelated to any legitimate state objective.")*

In the instant matter, the alleged conduct does not even approach the level of animosity set forth in *Tapalian* and *Rubinovitz*.

**4. Conclusion**

As set forth above, the plaintiffs do not meet the elements for their equal protection claims. In closing, the defendants respectfully reference the Court's "extreme reluctance to

entertain equal protection challenges to local planning decisions." *Macone v. Town of Wakefield, 277 F.3d 1 (10) (1st Cir. 2002)*. In Macone, the First Circuit noted:

> "Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts Planning Board necessarily involves some claim that the Board exceeded, abused or "distorted" its legal authority in some manner. Often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these State law claims constitutional labels such as due process or equal protection in order to raise a substantial Federal question under 1983. *Id. quoting Creative Environments, Inc. v. Dstabrook, 680 F.2d 822, 833 (1st Cir. 1982)*.

Consequently, the defendants request that the plaintiffs' equal protection claims be summarily dismissed.

**B. The Conspiracy Claims**

**1. Introduction**

In Count III, plaintiff Charda Properties alleges that the individually named defendants conspired to deny it the equal protection of laws and thus violated *42 U.S.C. § 1985(2)*. In paragraph 104 of the Complaint, the plaintiff refers to previous paragraphs in the Complaint as allegations of overt acts committed in furtherance of the conspiracy. The paragraphs cited contain all of the conduct that this plaintiff alleges was wrongfully committed by the defendants. However, notably omitted from the Complaint is the direct allegation that any of the defendants met and agreed to conspire against the plaintiff.

Similarly, in Count IV, plaintiff Iascone alleges that two defendants, Pitochelli and Wells conspired to deny him the equal protection of laws in violation of *42 U.S.C. § 1985(2)*. Again, this plaintiff relies on previous paragraphs in the Complaint to support the alleged "overt acts" of the claimed conspiracy. *Complaint, at ¶ 111*. Once again, although the cited paragraphs set forth individual allegations of misconduct by various defendants including Pitochelli and Wells,

the cited paragraphs, nor for that matter any paragraphs in the complaint, do not allege that Pitochelli and Wells met and agreed to violate the plaintiff Iascone's civil rights.

The omission of such an allegation is explained by plaintiffs in paragraph 105 where the plaintiffs state:

> "Due to the secretive nature of conspiracies, Charda is presently unaware of all meetings, acts, events and/or persons involved in these conspiratorial activities, but upon information and belief some or all of these individual defendants have participated in additional meetings, actions and events in furtherance thereof." *Complaint, at ¶ 105.*

The defendants submit that the plaintiffs' claims in this regard are woefully invalid.

**2. Plaintiffs' claims are facially insufficient because they must allege or point to evidence of an agreement amongst defendants.**

Allegations of conspiracy must be "supported by material facts, not merely conclusory statements." *Slotnick v. Garfingle, 632 F.2d 163, 165 (1st Cir. 1980)*. In the instant matter, the plaintiffs' complaint contains an extensive chronology of facts but fails "to set forth specific acts of collusion by the defendants." *D'Amario v. Russo, 718 F. Supp. 118, 122-123 (D.R.I. 1989)*. In *D'Amario*, Judge Lagueux dismissed the plaintiffs' claims of conspiracy as insufficient noting that bald assertions that the defendants conspired to violate civil rights are not enough. There must be allegations of material fact or specific acts of collusion by the named defendants. *Id. at 123*. Neither of the plaintiffs in this case, even after extensive discovery, can point to any specific acts of collusion by these defendants.

As noted *infra*, when addressing a motion for summary judgment, "there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Anderson, 477 U.S. at 251 (emphasis in original).* Quite simply, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party.*" Id. at 250*. In the instant case, despite extensive discovery, plaintiffs have still failed to uncover any evidence, let alone evidence sufficient for a jury to find in their favor, that defendants agreed to conspire to deprive them of their constitutional rights. Plaintiffs' conclusory statement, "upon information and belief," that a conspiracy existed, is simply insufficient to meet the burden of demonstrating that defendants conspired to violate plaintiffs' constitutional rights.

The plaintiffs' claims of conspiracy fail in another way. A claim in this regard under *U.S.C. § 1985(2) or (3)* must allege "some racial or perhaps otherwise class based invidiously discriminatory animus behind the conspirator's action." *D'Amario, 718 F. Supp. at 123 citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)*. Relying on ample precedent, Judge Lagueux , in *D'Amario*, set forth the requirements necessary for the plaintiff to meet this element:

> "(1) That he is a member of a class readily recognizable and traditionally protected by the Civil Right's Act; (2) that the defendants conspired to deprive him of equal protection rights because of his membership in that class; and (3) the criteria defining the class were invidious." *Id. at 123*.

Without unnecessary elaboration, the plaintiffs have not alleged, nor can they point to any evidence, that any of these three requirements are met. Neither, the plaintiff corporation nor Mr. Iascone is a member of a class readily recognizable and traditionally protected by the Civil Right's Act. As stated above, there is no evidence that any of the defendants "conspired" against either plaintiff. However, even if a collusion claim was capable of proof, the plaintiffs have not alleged and could not prove that such conspiracy was undertaken because of their membership in a protected class. In addition, the allegations of animus towards either plaintiff, personally, are not probative or sufficient to meet the class membership requirement. *Harrison v. Brooks, 519 F. 2d 1358, 1360 (1st Cir. 1975)*.

Since the plaintiffs can point to no reasonable evidence of any meetings, plans or collusion to violate their respective equal protection rights and since neither is in a protected class, the conspiracy counts must fail.[1]

**C. Interference with Business Relationships – Counts VI and VII**

**1. Introduction**

Plaintiff, Charda Properties alleges in Count VI that all of the defendants interfered with its prospective business relationships. The business "expectation" that the plaintiff corporation alleges was the subject of the interference concern its efforts "to proceed with its development plan." *Complaint at ¶ 125*. The plaintiff cites to paragraph 90 of the Complaint as an explanation of how the interference occurred. In that paragraph, the plaintiff alleges that the defendants "have been arbitrary, capricious, malicious, pretextural" and that their actions have been "unrelated to any legitimate or rational objective of the Zoning Board, Planning Board and/or the Town." *Complaint at ¶ 90.*

Similarly, plaintiff Iascone alleges in Count VII that defendants, Pitochelli, Wells and the Town interfered with his business relationship with the other plaintiff, Charda Properties. Although not set forth in any of the paragraphs in Count VII, in other parts of the Complaint plaintiff Iascone alleges that because he believed his involvement with Charda Properties was causing the delay in the project, he was forced to resign and withdraw from any interest in Charda Properties thus interfering with his business relationship with Charda Properties. *Complaint, at ¶¶ 70 and 71*. Specifically, the plaintiff Iascone alleges that a representative of Charda was informed by Town Council President Russo that two other Council Members,

[1] In addition, as more fully briefed above, the undisputed evidence fails to support a claim that plaintiffs' right to equal protection, apart from any conspiracy to violate the same, has been violated. Because a §1985 conspiracy

allegedly Pitochelli and Wells, said that they would never allow the project to go forward as long as Iascone was part of the project. *Complaint, at ¶ 70.*

The defendants contend that neither plaintiff has satisfied the elements for their respective claims of interference.

**2. Applicable Law**

The general elements of interference with business relationships (and prospective business relationships) include (1) the existence of a business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff. *Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986).* Malice, in the sense of spite or ill will, is not required; rather legal malice--an intent to do harm without justification--will suffice. *Id.* "To prevail, then, the plaintiff must prove that ultimately, the defendant acted 'without justification' or for an 'improper purpose.'" *UST Corp. v. General Road Trucking Corp., 783 A.2d 931, 937 (R.I. 2001).* The Restatement (Second) Torts § 767 (1979) lists seven factors that may be considered in determining the appropriateness of interference, namely, "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties." *Id.*

---

claim is derivative of the equal protection counts, they likewise cannot survive if those counts are summarily

### 3. Charda Properties' Claim

The plaintiff corporation, essentially, claims that since its application was delayed, the conduct of the Town officials qualifies it for this cause of action. More bluntly stated, the plaintiff corporation is stating that anytime there is an allegation that members of a Town Council or Zoning Board have acted wrongfully in a developer's project those members have committed the tort of interference with prospective business relationships. There are a number of difficulties with this general conclusion along with specific problems within the context of this case.

First, and foremost, the plaintiff's conclusion ignores the requirement that defendant's act of interference be premised on legal malice. In the instant case, for the very same reasons set forth in the defendants' argument regarding the plaintiff's claim of equal protection, plaintiff cannot succeed in establishing that defendants possessed legal malice against plaintiff. As previously stated, one element of the plaintiff's equal protection claim is malicious or bad faith intent to injure a person. This element is virtually the same as the legal malice element required for intentional interference with contractual relations. *See Mesolella, 508 A.2d at 669 (legal malice is an intent to do harm without justification)*. Consequently, the Court's determination of whether the plaintiff has met this element in the equal protection claim will also decide this claim. The defendants have already argued that the plaintiff cannot point to any evidence of the malicious conduct necessary to meet this element. The only evidence that the plaintiff can point to concerns the alleged comments of the Building Inspector that there was "no way" that this project was "going through" and that it would only go through "over [his] dead body." The

---

dismissed.

defendants continue to submit that this allegation, even if true, is woefully short of the malice needed to meet this element, whether for equal protection purposes or for this interference claim.

In addition, on a general basis, there can be no "interference" when a government body like a Zoning Board or Town Council acts in its official capacity. Municipal boards and/or commissions must take action, in some form, regarding submitted applications. Their action on that application should not be deemed to qualify as interference even if there are allegations of wrongdoing. Some of the factors set forth in the Restatement (Second) of Torts §767 bear this out. Town Council members and Zoning Board members must be free to make decisions pursuant to their official responsibilities. *See Restatement (Second) of Torts §767, subsection E.* Decisions of Zoning Boards are frequently appealed to the Superior Court. An interference action should not lie every time the Court overturns the original municipal decision. The defendants submit that there is a policy interest in protecting the freedom of action of these types of governmental entities.

In addition, the causal connection between the decisions of the Zoning Board (and Town Council members) to the claimed interference is extremely remote. In this matter, the plaintiff is alleging that the defendants' conduct interfered with its eventual plans to market the condominium units. The defendants submit that claiming that their conduct in the very initial stages of development eventually impacts the sale of condominium units for a completed project overlooks all of the complications that normally occur in a project of this nature.

**4. The claims of plaintiff Iascone**

The defendants incorporate their arguments regarding the element of malice as a defense to the separate claim made by plaintiff Iascone. In addition, the defendants submit that the allegation that Mr. Iascone's business relationships were interfered with because he withdrew

from the corporation in an effort to allow the project to proceed, is too speculative to meet the needed element that the defendants "interference" was the cause of this voluntary act.

Moreover, the act of interference has to be "intentional", meaning that it is done with the harm anticipated in mind. The allegations in the Complaint[2] allege that council members Pitochelli and Wells informed the other council members, not Charda Properties or Mr. Iascone, that they would never allow the project to go forward as long as Iascone was involved. The Complaint does not allege, and the plaintiff cannot point to any evidence, that these two council members intended these purported comments to reach either of the plaintiffs. The interference alleged by Iascone is the interference with Iascone's business relationship with Charda Properties. In order to "intentionally act to interfere" with the relationship *between* the two (2) plaintiffs, plaintiff Iascone would have to demonstrate that the council members intended these comments to reach the plaintiffs and thus force Mr. Iascone into terminating his relationship with Charda Properties. Quite simply, plaintiffs cannot demonstrate that the alleged comments, made in private to other council members, were intended to some how reach either plaintiff with the intent to force Iascone to withdraw. Absent this essential evidence, plaintiff Iascone's claim of interference must fail.

**5. Plaintiff Iascone's claims of extortion**

In Count V, plaintiff Iascone claims that the conduct of Wells and Pitochelli amounted to extortion. He specifically claims that their purported statement to Council President Russo, which was later allegedly relayed to plaintiff, constitutes extortion. As previously set forth, the purported statements were that the project would never receive approval from these two (2) council members as long as the plaintiff was involved. *See Complaint at ¶ 119*. The plaintiff

claims that he withdrew from the project when Council President Russo informed him of these comments. Id. at ¶ 122.

The elements of criminal extortion are found in *R.I.G.L. § 11-42-2*:

> "Whoever, verbally or by written or printed communication, maliciously threatens to accuse another of a crime or offense or by verbal or written communication maliciously threatens any injury to the person, reputation, property, or financial condition of another, or threatens to engage in other criminal conduct with intent to extort money or any unlawful pecuniary advantage, or with intent to compel any person to do any acting in his or her will, or to prohibit any person from carrying out a duty imposed by law, shall be punished by imprisonment in the adult correctional institutions without more than 15 years or by a fine of not more than $25,000 or both."

In this case, the applicable elements and corresponding allegations would be:

(1) A verbal communication;

(2) Maliciously threatening injury to the financial condition of another;

(3) To compel a person to act against his will.

However, the deficiencies in this count are similar to the flaws in plaintiff Iascone's claim of intentional interference with business relations. The claim that an alleged comment by the Town Council President concerning statements by two other council members was intended to cause and/or actually caused the plaintiff Iascone to sever an association from the corporation is speculative, at best. Further, even if the statements were made by Pitochelli and Wells, since they were not made directly to either plaintiff, it is difficult to claim or prove the statements were threatening or malicious. In the final analysis, there is no evidence that the statements were made to the Council President with the intent that he would convey such comments to the plaintiffs thereby forcing the separation.

---

[2] While defendants categorically deny making these statements, for purposes of this motion the statements must be considered.

The act of extortion has to be direct and not tenuous. Here, the plaintiff cannot even offer an unsupported inference that Pitochelli and Wells intended to compel his separation from the plaintiff corporation by making their comments to others. There is simply no evidence of this important connecting fact. As such, this count must fail and summary judgment in favor of defendants should enter.

## V. CONCLUSION

For the reasons set forth above, as well as those that may be raised at hearing, the defendants respectfully request that their Motion for Summary Judgment be granted.

Defendants,
By their attorney,

/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on September 5, 2007, and is available for viewing and downloading from the ECF system.

John B. Reilly, Esq. (#1811)
JOHN REILLY & ASSOCIATES
Suite 330 - Summit West
300 Centerville Road
Warwick, RI 02886

Alden C. Harrington, Esq.
BOYAJIAN HARRINGTON & RICHARDSON
182 Waterman Street
Providence, RI 02906

/s/ Marc DeSisto